Kevin Gerard O'Grady
Law Office of Kevin O'Grady, LLC
1164 Bishop Street, Suite 1605
Honolulu, Hawaii 96813
(808) 521-3367
Hawaii Bar No. 8817
Kevin@KevinOGradyLaw.Com

Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TRAVIS BROWN, JOHN INOUYE, LUCAS BRECKENRIDGE, HAWAII RIFLE ASSOCIATION<br><br>Plaintiffs,<br><br>v.<br><br>KAUAI COUNTY,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)  VERIFIED COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

# VERIFIED COMPLAINT
# FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW the Plaintiffs, Travis Brown, John Inouye, Lucas Breckenridge, and Hawaii Rifle Association, (hereinafter "Plaintiffs"), by and through their undersigned counsel, and complains of the Defendant as follows:

## I.    Introduction

1.    The question presented by this case is whether the County of Kauai, hereinafter "County", can take forty days or longer to process a firearm permit to acquire when state law requires "…that a permit shall be issued or the application denied **before the fortieth day** from the date of application." *See* H.R.S. § 134-2(e) (Emphasis added);

2.    Accordingly, Plaintiffs brings this challenge to County's policy, rule, habit and custom of delaying issuing permits to acquire to persons who have applied for Permits to Acquire, "PTA", for forty days or more;

3.    In the alternative, Plaintiffs brings this challenge to County's application of laws, specifically, but not limited to, H.R.S. § 134-2(e) as applied to Plaintiffs;

## II.    PARTIES

4.    Plaintiff Travis Brown, (hereinafter "Brown"), is an adult male resident of the State of Hawaii, resides in the County of Kauai, and is a citizen of the United

States;

5.    Plaintiff John Inouye, (hereinafter "Inouye"), is an adult male resident of the State of Hawaii, resides in the County of Kauai, and is a citizen of the United States;

6.    Plaintiff Lucas Breckenridge, (hereinafter "Breckenridge"), is an adult male resident of the State of Hawaii, resides in the County of Kauai, and is a citizen of the United States;

7.    Plaintiff Hawaii Rifle Association (hereinafter "HRA") is a 501(c)(7) non-profit organization dedicated to defending Hawaiians' Second Amendment rights. It has members who live inside and outside of the state of Hawaii, who have, will and would apply for Permits to Acquire (PTA) in the future;

8.    Defendant County of Kauai, (hereinafter "County"), is a municipal corporation incorporated under the laws of the State of Hawaii. County is authorized by law to control and maintain the Kauai Police Department, an agency of the County, who acts on County's behalf in the area of law enforcement.  County is therefore ultimately responsible for Kauai Police Department, (hereinafter "KPD"), and their actions, and therefore, must assume the risks incidental to the maintenance of KPD, their employees, laws, customs and policies. County can be served by serving the Department of the Corporation Counsel, Kauai County at 4444 Rice Street, Suite 220, Lihua Hawaii 96766;

### III.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988;

10.    Venue lies in this Court pursuant to 28 U.S.C. § 1391;

### IV.    STATEMENT OF FACTS

11.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.";

12.    The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 1027 (2016);

13.    "The 1773 edition of Samuel Johnson's dictionary defined "arms" as "[w]eapons of offence, or armour of defence." 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978) (hereinafter Johnson). Timothy Cunningham's important 1771 legal dictionary defined "arms" as "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." 1 A New and Complete Law Dictionary; see also N. Webster, American Dictionary of the English Language (1828) (reprinted 1989)

4

(hereinafter Webster) (similar)." *Dist. of Columbia v Heller*, 554 U.S. 570 (2008) at 581.;

14.     The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008). The Fourteenth Amendment to the United States Constitution provides in pertinent part: No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws;

15.     Hawaii law, specifically Hawaii Revised Statutes Section 134 *et seq*, is a comprehensive set of laws covering all aspects of firearms in Hawaii including everything from acquisition, possession, ownership, usage and carriage of arms[1];

---

[1] *See* Exhibit 1.

16.    Plaintiffs do not agree that any State law or County rule or policy regarding the exercise of Second Amendment rights is constitutional;

17.    Plaintiffs do not concede that any permit or permission[2] is necessary to exercise any aspect of Second Amendment rights;

18.    The State of Hawaii has not gotten the United States Supreme Court's message from *Heller* and *Bruen.* Prior to *Bruen*, Hawaii had treated, for more than a century, the Second Amendment as dead, buried and forgotten having almost never issued any concealed carry permits.[3] Once *Bruen* was decided and county police chiefs began to issue a trickle of concealed carry permits, under new county specific onerous carry concealed permit regulations, the state legislature acted to ensure that even if people managed to overcome the burdensome requirements to actually obtain a concealed carry permit, the permits would be rendered utterly useless.[4] Hawaii merely switched gears from almost never issuing any concealed

---

[2] Or registration of or for the exercise of any Second Amendment right.
[3] *See e.g. Young v. Hawaii*, 896 F.3d 1044, 1071 n.21 (9th Cir. 2018) ("Hawaii counties appear to have issued only *four* concealed carry licenses in the past *eighteen years. See* 2000 Haw. Att'y Gen. Reps., *Firearm Registrations in Hawaii, 2000 et seq;"*), judgment vacated, 142 S.Ct. 2895 (2022).
[4] The state of Hawaii believes the **lawful** exercise of Second Amendment rights, by persons who are onerously vetted, both for carrying concealed weapons <u>and</u> also for the mere exercise of owning and possessing a firearm through the PTA scheme, prior to owning or possessing or carrying, are a danger and treats them like criminals.  *See* Testimony of the Attorney General in support of SB1230 Hawaii's massive effort to stop *Bruen* in its tracks.  *See* Exhibit 2.

carry permits so that there was no one with a permit, to making permits, to acquire, and carry, now begrudgingly issued to be so limited as to make it so that permit holders could not carry anywhere.[5] Notwithstanding the United States Constitution and the Second Amendment and the *Bruen* decision, Hawaii, and the political subdivisions of Counties, just simply do not want anyone to be able to carry, or own, or possess, a firearm anywhere within the state- which is their fundamental, ancient, constitutionally protected and guaranteed right.[6]  In response to *Bruen,* the state legislature sought to severely restrict law abiding peoples' right to defend themselves in the event of confrontation, at home and in public[7]. The legislature specifically found and stated that it intended to restrict carrying and possessing

---

[5] The State of Hawaii issued extensive rules regarding PTA as well. *See* Exhibit 1 infra.  Hawaii laws governs but delegates substantial authority and discretion to individual counties and the respective police chiefs.  Each county therefore has the ability to add more layers of bureaucracy designed to abuse and frustrate the exercise of Second Amendment rights.  Counties did exactly that with the promulgation of additional burdensome PTA requirements.  Herein, Plaintiffs, at present, only attack the policy, custom and practice of County in the delay of the issuance of PTA and then only to the extent that it violates current state law.

[6] To this day, Hawaii relies on the laws of kings and laws specifically designed to destroy Second Amendment rights to justify their uninterrupted mission to block the exercise of Second Amendment rights.  Hawaii has not yet repudiated or disclaimed its reliance on kings.  *See Wolford v Lopez*, 24-1046, docket #41, at 5 and 32, attached as Exhibit 3, and also *Young v Hawaii,* 20-1639, attached as Exhibit 4.

[7] The right to self-defense is at the core of the Second Amendment, but the Second Amendment is not limited to self-defense and also includes all other means of exercising the right, including collections arms, practice, hunting, competitive shooting and other means of exercising the right.

arms, which it characterized as "dangerous", by law-abiding persons with concealed carry licenses;[8]

19.   County, not to be outdone by the State of Hawaii in trying to block the exercise of Second Amendment rights in the state generally, promulgated new County specific abusive rules regarding both the carrying of concealed weapons and also PTA;[9]

20.   Hawaii State law and County rules are both replete with nearly boundless discretion to deny applications to exercise Second Amendment rights. Both the State of Hawaii and various Counties have an extensive history of violating and blocking Second Amendment rights and doing so so severely that they have quickly settled when sued.  *See Nelson v. City and Cnty. of Honolulu,* 1:24-cv-00100-MWJS-RT Doc. No. [25] (stipulated injunction which compelled Honolulu to stop its policy of excessive delays of over one year to issue concealed carry permits); *Fotoudis v. City and Cnty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014) (overturning Hawaii's ban on green card holders owning firearms); *Yukutake v. Conners*, 554 F. Supp. 3d 1074 (D. Haw. 2021) (overturned two of

---

[8] The State believes that all Second Amendment rights are by their very nature dangerous and that those who exercise Second Amendment rights are by their very nature dangerous people.  *See* Exhibit 2.
[9] *See* https://www.kauai.gov/Government/Departments-Agencies/Police-Department/Firearms-Section, https://www.kauai.gov/Government/Departments-Agencies/Police-Department/Firearms-Section#section-4, last visited April 16, 2026.

Hawaii's firearm registrations law and via settlement removed two County of Honolulu firearm policies). *Kealoha v Cnty. of Hawaii,* 1:25-cv-00281 Doc. No. [14] (stipulated injunction prohibiting County of Hawaii from using police investigations to prohibit ownership of firearms); *Shiroma v. Hawaii Cnty,* 1:25-CV-00181 JAO-WRP Doc. No. [23] (stipulated injunction prohibiting County of Hawaii from enforcing a lifetime ban on firearm ownership for misdemeanor crime); *Santucci v. City and Cnty. of Honolulu*, No. 22-CV-00142-DKW-KJM, 2022 WL 17176902 (D. Haw. Nov. 23, 2022) (enjoining Honolulu's firearms mental health policy); *Choda v. Hawaii Cnty,* 1:21-cv-00384-DKW-RT Doc. No. [14] (stipulated injunction as to the County of Hawaii's policy which prohibited firearms ownership for those convicted of certain nonviolent crimes); *Roa v. City and Cnty. of Honolulu,* 1:21-cv-00333-DKW-KJM Doc. No. [14] (stipulated injunction enjoined Honolulu from prohibiting firearms ownership for certain infractions); *Nickel v. Connors*, 1:20-cv-00330-JMS-RT Doc. No. [22] (stipulated injunction enjoining Hawaii's ban on U.S. Nationals owning firearms); *Maui Ammo & Gun Supply v. Maui Cnty.,* 1:22CV00138 (Maui's restriction on the sale of electric gun); *Roberts v. Connors*, 1:19CV00165 Doc. No. [25] (settlement compelling the State to allow green holder to apply for a concealed carry license); *Roberts v. City and Cnty. of Honolulu*, 1:15CV00467 (settlement compelling Honolulu County to remove its restrictions on U.S. green card holders owning

firearms); *Pagba v. City and Cnty. of Honolulu*, 1:22CV00521 (removal of Hawaii's lifetime ban on firearm ownership for convictions for misdemeanor crimes after onset of litigation); *Grell v. County of Hawaii* CV 23-00328 JAO-RT Doc. No. [20] (stipulated injunction requiring County of Hawaii to remove its required waiver of all privileges including attorney client privilege); *Day v. Cnty. of Hawaii,* 1:23-cv-00576-LEK-RT Doc. No. [19] (stipulated injunction regarding County of Hawaii's concealed carry permit issuance policies); *Yukutake v. Shikada,* 1:22-cv-00323-JAO-KJM Doc. No. [41] (stipulated injunction which enjoined Hawaii's ban on billy club carry); *Roa v. Lopez, 1*:23-cv-00079-MWJS-RT (Hawaii removed its ban on switchblades after the onset of litigation); *Thompson v. Hawaii,* 1:24-cv-00333-DKW-WRP (stipulated injunction regarding County of Hawaii's mental health policy); *Peter v. Lopez,* 1:24-cv-00508-MWJS-RT Doc. No [18] (stipulated injunction enjoining Hawaii's ban on possession of firearms by individuals residing in Hawaii pursuant to the Compact of Free Association); *Roberts v. Ballard*, 1:18CV00125 (legalized electric weapons after the onset of litigation); *Teter v. Lopez*, 125 F.4th 1301 (9th Cir. 2025) (legalizing possession of butterfly knifes after the onset of litigation), *Solinsky v Lopez*, 1:26-cv-00117-JAO-RT Doc No. [19] stipulated injunction allowing non-residents to apply for concealed carry licenses, and finally *Arnold v Hawaii County,* 1:26-cv-00064-SASP-RT Doc. No. [20], which addresses the same issue in the instant

lawsuit involving denial of PTA past thirty-nine days;

21. The State of Hawaii, and various Counties, since *Bruen*, issued in June of 2022, and shortly thereafter, laws specifically designed to frustrate and deny Second Amendment rights,[10] and have already settled no fewer than sixteen lawsuits, *see* above. There is thus an established history of intentionally infringing, delaying or blocking the exercise of second Amendment rights across the state of Hawaii;

22. The Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen* found "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." 597 U.S. at 24, 142 S.Ct. 2111 (citation omitted);

23. Hawaii state law requires that a citizen obtain a permit in order to acquire a firearm, a "PTA":

---

[10] There are only five counties in Hawaii. Kalawao county may soon cease to exist having fewer than one hundred residents and is a county in spirit only and has no actual county government and only has a Department of Health appointee to manage the few residents. WWW.OHA.org, last visited February 7, 2026.

(a) No person shall acquire the ownership of a firearm, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner or unregistered, either by purchase, gift, inheritance, bequest, or in any other manner, whether procured in the State or imported by mail, express, freight, or otherwise, until the person has first procured from the chief of police of the county of the person's place of business or, if there is no place of business, the person's residence or, if there is neither place of business nor residence, the person's place of sojourn, a permit to acquire the ownership of a firearm as prescribed in this section. When title to any firearm is acquired by inheritance or bequest, the foregoing permit shall be obtained before taking possession of the firearm; provided that upon presentation of a copy of the death certificate of the owner making the bequest, any heir or legatee may transfer the inherited or bequested firearm directly to a dealer licensed under section 134-31 or licensed by the United States Department of Justice without complying with the requirements of this section.

Haw. Rev. Stat. Ann. § 134-2 (West);

24.    In relevant part, Hawaii state law requires that the issuing County process a permit to acquire application in under forty days of the person applying.

(e) The permit application form shall be signed by the applicant and issuing authority. One copy of the permit shall be retained by the issuing authority as a permanent official record. Except for sales to dealers licensed under section 134-31, dealers licensed by the United States Department of Justice, law enforcement officers, or where any firearm is registered pursuant to section 134-3(a), no permit shall be issued to an applicant earlier than fourteen calendar days after the date of the application; provided that **a permit shall be issued or the application denied before the fortieth day from the date of application**…. (Emphasis added)

*See* H.R.S. § 134-2(e);

25.    Despite state law requiring otherwise, County routinely takes forty days or more to process a permit to acquire application;

26.     County has also implemented other rules and or customs and or policies designed to impede, infringe, delay, block, or slow the exercise of Second Amendment rights, including, but not limited to – not allowing some applicants to use online forms, requiring some applicants to appear in person. In fact, County's webpage stated "Please note, there is a 14-40 days waiting period on all permits before they can be issued.".  https://www.kauai.gov/Government/Departments-Agencies/Police-Department/Firearms-Section#section-3, last accessed May 6, 2026.  County has thus acknowledged that it regularly assumes that a permit will not be issued until the 40[11] day and beyond[11];

27.     Plaintiffs can point to other occasions, beyond the named Plaintiffs, where County has taken longer than thirty-nine days to process a permit to acquire;

28.     Kyle Sherrer, not a Plaintiff, submitted a PTA application on February 25, 2026 and received a PTA on April 7, 2026, forty-one (41) days later, *see* Declaration attached as Exhibit 5;

29.     Howard Faria, not a plaintiff, similarly had to wait fifty days to receive his PTA, see Declaration attached as Exhibit 6.

30.     County delays the PTA process to abuse and frustrate those who seek

---

[11] The acknowledgement treats the delay as a "waiting period" thus, even if the PTA is ready, County will "wait" 14 to 40 days before issuing it.  County's webpage places no limit on the "wait".  This is directly contrary to State law that places a maximum time of 39 days before issuance- not a "waiting" period.

to exercise their Second Amendment rights;

## V   PLAINTIFFS

31.     Plaintiff TRAVIS BROWN is a resident of the County of Kauai and a

United States citizen;

32.     Plaintiff Brown is employed as a guardsman in the Hawaii Air

National Guard;

33.     Plaintiff Brown currently legally owns firearms in the County of

Kauai;

34.     On August 14, 2025, Plaintiff Brown applied for a permit to acquire a

firearm;

35.     His October 6, 2025, permit was issued.  Mr. Brown thus waited fifty-

three (53) days for his permit to acquire to be processed;

36.     Plaintiff Brown routinely buys firearms and intends to buy additional

firearms in the near future;

37.     Plaintiff Brown is not disqualified under federal or state law from

acquiring, owning or possessing a firearm;

38.     Plaintiff Brown has completed all necessary state and County

administrative requirements to obtain a PTA;

39.     Plaintiff Brown plans to buy additional firearms in the near future,

therefore he continues to be harmed by the County's custom, policy or practice of

14

taking greater than thirty-nine days to process permits to acquire firearms;

40. Plaintiff Brown was injured by County's custom, policy or practice of delay of his PTA in excess of thirty-nine days and in violation of State law;

41. Plaintiff Brown's Declaration, attached hereto as Exhibit 7, is incorporated into this complaint;

42. Plaintiff JOHN INOUYE is a resident of the County of Kauai and a United States citizen;

43. Plaintiff John Inouye is currently employed as an assistant manager at Alpha Electric Supply;

44. Plaintiff Inouye legally owns firearms in the County of Kauai;

45. On December 22, 2025, Plaintiff Inouye applied for a permit to acquire a firearm;

46. His permit was not processed until February 5, 2026. Mr. Inouye had to wait forty-five (45) days for his permit to be issued;

47. Plaintiff Inouye buys firearms and intends to buy additional firearms in the near future;

48. Plaintiff Inouye is not disqualified under federal or state law from acquiring, owning or possessing a firearm;

49. Plaintiff Inouye has completed all necessary state and County administrative requirements to obtain a PTA;

50. Plaintiff Inouye plans to buy additional firearms in the near future, therefore he continues to be harmed by the County's custom, policy or practice of taking greater than thirty-nine days to process and issue permits to acquire;

51. Plaintiff Inouye was injured by County's custom, policy or practice of delay of his PTA in excess of thirty-nine days and in violation of State law;

52. Plaintiff Inouye's declaration, attached as Exhibit 8, is incorporated into this complaint;

53. Plaintiff LUCAS BRECKENRIDGE is a resident of the County of Kauai and a United States citizen;

54. Plaintiff Breckenridge is self-employed as a land surveyor.

55. Plaintiff Breckenridge currently legally owns firearms in the County of Kauai;

56. On May 9, 2025, Plaintiff Breckenridge applied for a permit to acquire a firearm;

57. KPD acknowledged receipt of the PTA on May 12, 2025.  His permit was not processed until June 30, 2025, and thus he waited forty-nine (49) days;

58. Plaintiff Breckenridge routinely buys firearms and intends to buy additional firearms in the near future;

59. Plaintiff Breckenridge is not disqualified under federal or state law from acquiring, owning or possessing a firearm;

16

60.   Plaintiff Breckenridge has completed all necessary state and County administrative requirements to obtain a PTA;

61.   Plaintiff Breckenridge plans to buy additional firearms in the near future, therefore he continues to be harmed by the County's custom, policy or practice of taking greater than thirty-nine days to process permits to acquire firearms;

62.   Plaintiff Breckenridge was injured by County's custom, policy or practice of delay of his PTA in excess of thirty-nine days and in violation of State law;

63.   Plaintiff Breckenridge's declaration, attached hereto as Exhibit 9, is incorporated into this complaint;

64.   Hawaii Rifle Association (hereinafter "HRA"), is a 501(c)(7) non-profit organization dedicated to defending Hawaiians' Second Amendment rights. It has members who live inside and outside of the state of Hawaii, and have in the past, applied for PTA, and based upon information and belief, at least some of the PTA have taken more than thirty-nine days to process, and HRA members will, in the future, apply for more PTA's;

65.   All three individual plaintiffs are members of the Hawaii Rifle Association;

## VI

### COUNT I
### U.S. CONST., AMEND. II As Made Applicable to the States by U.S. CONST.,

### AMEND. XIII

66.     Plaintiffs repeat and reallege the allegations of all preceding Paragraphs above, as if set forth verbatim herein;

67.     The Second Amendment to the United States Constitution states, in pertinent part, that "the right of the people to keep and bear arms, shall not be infringed." The Second Amendment further "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008);

68.     As the Court subsequently held in *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010): "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." 130 S.Ct. at 3043;

69.     The Supreme Court in *New York State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1 (2022) holds that restrictions on Second Amendment rights must be justified through the use of historical laws that similarly restricted firearms usage;

70.     Other courts have found shorter waiting periods violate the Second Amendment;

71.     The Tenth Circuit recently struck down New Mexico's seven day

18

waiting period to own a firearm. In doing so the Court found "[n]othing in the record suggests that the historically understood right to keep and bear arms tolerated universal and indiscriminate burdens on purchasing or acquiring firearms with no way to enjoy the full right." *Ortega v. Grisham*, 148 F.4th 1134, 1155 (10th Cir. 2025);

72.    Similarly in preliminarily enjoining Maine's three-day waiting period the Court there found "[t]he waiting period is not narrow since it applies to very near everyone seeking to purchase a firearm and their entire right to keep and bear any firearm at all through purchase is temporarily banned." *Beckwith v. Frey*, 766 F. Supp. 3d 123, 134 (D. Me. 2025);

73.    Acquisition through purchase of a firearm through a Federally Licensed Firearms Dealer requires the "FFL" to conduct an "instant" background check through "NICS", the National Instant Criminal Background Checks System, *See* https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics[12];

74.    Putting aside the State of Hawaii's other questionable statutory delays, County's application of the State law and the dubious limit of forty days regarding

---

[12] 89% of the checks are "instant" while 98% can be resolved in three days.  See www.nssf.org, last visited February 7, 2026.  Plaintiffs do not concede that any sort of so-called "background check" or delay must be completed or submitted by those who exercise Second Amendment rights.

the issuance of a PTA, it is County's policy, custom and practice to just ignore the forty day state law limit;

75.    County treats the exercise of the Second Amendment as a second-class and or disfavored right;

76.    County's policy, rule, habit and custom of taking more than thirty-nine days to process a permit to acquire operates to burden Plaintiffs and others similarly situated to them, with regard to their ability or right to purchase, possess, own and keep firearms within their home and is a perfect example of the execution of a state law put to abusive ends;

77.    County has violated Plaintiffs' Second Amendment rights through an independent city policy because state law requires that a permit to acquire be processed in fewer than forty days and County is taking longer than that;

78.    County also violates the Second Amendment because County's conduct is ultra vires;

79.    Ultra vires conduct is inherently arbitrary. *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778, 790 (2d Cir. 2007);

80.    *Bruen* commands that government may not have discretion in making determinations on Second Amendment rights. *See Bruen*, 142 S. Ct. at 2138 n.9. (Prohibiting governments from engaging in the "appraisal of facts, the exercise of

judgment, and the formation of an opinion)";[13]

81. County's routine processing times are ultra vires because they are in excess of what state law allows to process a permit to acquire;

82. Thus, County's conduct violates the Second Amendment on these grounds as well;

83. In the alternative, County's application of H.R.S. § 134-2(e) is unconstitutional as applied to Plaintiffs;

84. The challenged County action violates the Second Amendment, WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below;

## COUNT II (Procedural Due Process)

85. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein;

86. County's excessive delays also violate procedural due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("At some point, a delay in the post-termination hearing would become a constitutional violation.");[14]

---

[13] Assuming that an "instant" check can occur, without County police department or state of Hawaii involvement, and only looking at purchases from an FFL, and notwithstanding that Plaintiffs do not concede that any sort of "check" or delay is constitutional, the existence of an "instant" check, now in place for decades at FFL establishments, across the USA, means the State of Hawaii's laws, County's rules, and County's application of its rules and State law, are all deep, enduring and extensive evidence of an abusive end and specific intent to block or delay the exercise of Second Amendment rights.

[14] *See* NICS discussion infra.

87. In *Kuck v. Danaher*, 600 F.3d 159, 161 (2d Cir. 2010) the 11th Circuit found "a practice of improperly denying permits, unnecessarily prolonging the appeals that follow, and then quietly resolving disputes at the last minute"…"stated a procedural due process claim." *Id.;*

88. To demonstrate a claim for procedural due process a litigant must fulfill the test laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires that we balance: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." *Id.;*

89. Here, Plaintiffs can demonstrate a violation of procedural due process;

90. They fulfill the first prong of *Mathews* because they have a protected liberty interest in owning firearms;

91. As to the second prong, Plaintiffs, and other similarly situated, suffer a threat of erroneous deprivation because County will not process their current and future applications in under forty days.  Thus, there is an amount of time where Plaintiffs are unable to possess the firearm(s) associated with their permit to acquire solely due to County taking forty days or more to process a permit to acquire;

92. Furthermore, there is already an alternative procedure for County to use. That being, County could simply use the process laid out in state law. As the

22

*Kuck* Court found, the second prong is fulfilled "[b]ecause this practice appears to have affected a significant number of applicants, and the delay is considerable, the second Mathews factor weighs in favor of Kuck at this stage of the proceedings." *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010);

93.   As to the third prong, County has no interest in placing a delay on Plaintiffs' permits to acquire which violates state law.  As Judge Watson found in granting a preliminary injunction in another firearms case where the City and County of Honolulu was found to be violating state law, "it is in the public interest to have the language of Hawai'i law enforced". *Santucci v. City & Cty. of Honolulu*, 2022 U.S. Dist. LEXIS 213030, (D. Haw. Nov. 23, 2022);

94.   Therefore, Plaintiffs have alleged a violation of procedural due process based on County taking forty days or more to process their permit to acquire applications;

95.   For the reasons laid out above, County's, and Kauai County Police department's rules, customs, policy, and or practices violate Plaintiffs' Procedural Due Process rights;

## COUNT III (Substantive Due Process)

96.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth herein;

97.   When a Defendant, such as County, acts arbitrarily and/or unreasonably

23

it violates substantive due process;

98.     County's policy is ultra vires because state law requires County to process a permit to acquire in fewer than forty days and County routinely takes forty days or longer to process a permit to acquire;

99.     Plaintiffs have a liberty interest and a fundamental right interest in exercising their Second Amendment rights to keep and bear arms, including possessing firearms in their home for lawful self-defense;

100.    For purposes of all Counts and Claims the Defendant has acted under "color of state law" within the meaning of Section 1983;

101.    County, by denying the Plaintiffs the ability to exercise their Second Amendment rights to own firearms in a way that contradicts what state law requires, i.e. in a ultra vires manner, has acted arbitrarily and unreasonably;

102.     When government, such as County, has acted in an arbitrary, and or unreasonable manner that impacts a protected liberty or property interest, it has violated substantive due process;

103.     "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana,* 504 U.S. 71, 78 (1992);

104.    Here, County's policy, custom, rule, habit, is inherently arbitrary and tainted with fundamental irregularities due to the fact it does not comply with state

law;

105.   Plaintiffs have a right to substantive due process which means that their permit to acquire applications cannot be denied in an arbitrary or unreasonable manner;

106.   In *Cine SK8, Inc. v. Town of Henrietta* 507 F.3d 778 (2d Cir. 2007) the Second Circuit found ultra vires conduct violates due process. "[I]f the Town Board did not have authority for the actions it took regarding Fun Quest's permit—as it appears it did not—the Board's actions were ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation." *Id.* at 790;.

107.   In this case, a due process violation exists because County claims authority to regulate PTA applications pursuant to state law. County's denial of Plaintiff's firearms PTA is contrary to the authority state law provides;

108.   For the reasons laid out above, County's, and Kauai county Police department's rules, customs, policy, and or practices violate Plaintiffs' Substantive Due Process rights;

### COUNT IV (DECLARATORY JUDGMENT)

109.   Plaintiffs repeat and reallege the allegations of Paragraphs above, as if set forth herein;

110.   The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a);

111. Absent a declaratory judgment, there is a substantial likelihood that Plaintiffs will suffer irreparable injury in the future;

112. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment;

113. This Court possesses an independent basis for jurisdiction over the parties;

114. Plaintiffs request a declaratory judgment declaring that Defendant's laws, customs, rules, habits and policies of taking forty days or more to issue PTA which deny Plaintiffs the right to own, possess and or acquire, a firearm violates Plaintiffs' Second Amendment rights;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendant as follows:

1. An order preliminarily and permanently compelling County, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, to process permits to acquire in under forty days and in accordance with current state law;

2. Preliminarily, and thereafter permanently enjoin County from taking

forty days or more to process a permit to acquire a firearm, as applied to Plaintiffs when processing their individual permits to acquire;

3.      Declare that County's custom, practice or policy of taking forty days or more to process a permit to acquire a firearm is unconstitutional both as applied to Plaintiffs and to the general public;

4.      Award nominal  damages;

5.      Award compensatory damages;

6.      Award costs of the  suit, including attorneys' fees and costs pursuant to 42 U.S.C. §1988;

7.      Such other relief consistent with the injunction as appropriate; and

8.      Such other further relief as the Court deems just and appropriate.


DATED:  Honolulu, Hawaii, May 12, 2026.

Respectfully submitted,


| | |
|---|---|
| /s/ *Kevin O'Grady* | /s/ *Alan Alexander Beck* |
| Kevin Gerard O'Grady | Alan Alexander Beck |
| Law Office of Kevin O'Grady | Law Office of Alan Beck |
| 1164 Bishop Street, Suite 1605 | 2692 Harcourt Drive |
| Honolulu, Hawaii 96813 | San Diego, CA 92123 |
| (808) 521-3367 | (619) 905-9105 |
| Hawaii Bar No. 8817 | Hawaii Bar No. 9145 |
| Kevin@KevinOGradyLaw.Com | Alan.alexander.beck@gmail.com |

## VERIFICATION

I, Lucas Breckenridge, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on _____April_____30___, 2026

_____

30

## VERIFICATION

I, Travis Brown, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions ,

including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of

America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on ____April____ 30 , 2026


_____Travis Brown_____

28

**VERIFICATION**

I, John Inouye, declare as follows:

1. I am a Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on ___*May 04*___ , 2026

_____

29

_____

## VERIFICATION

I, Kainoa Kaku, declare as follows:

1. I am President of the Hawaii Rifle Association and am authorized to represent it in this lawsuit and am thus am a Plaintiff in the present case and a citizen of the United States of America.

2 . I have personal knowledge of myself, my activities, and my intentions , including those set out in the forgoing *Verified Complaint for Declaratory and Injunctive Relief,* and if called on to testify, I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Verified Complaint for Declaratory and Injunctive Relief* concerning myself, my activities and my intentions are true and correct.

Executed on May 12, 2026

_____

KAINOA KAKU

31